UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN L. BUDSBERG, for the Estate of Mark DuBois and Estate of Donna DuBois,<br><br>Plaintiff,<br><br>v.<br><br>TED SPICE, BRIAN BARTELSON, ALASKA USA FEDERAL CREDIT UNION, ESTATE OF DORETHA SPICE, DONNA E. DUBOIS, Estate of Doris E. Mathews, CITY OF PUYALLUP, ESTATE OF DORIS MATTHEWS, TACOMA PIERCE COUNTY HEALTH DEPARTMENT, UNITED STATES OF AMERICA, and THOMAS MILLER,<br><br>Defendants. | CASE NO. 19-5772 RJB<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Alaska USA Federal Credit Union's ("Alaska CU") Motion for Summary Judgment and Disbursement of Registry Funds. Dkt. 77. The Court has considered the pleadings filed regarding the motions and the remaining file.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 1

This interpleader case was filed on August 20, 2020, by Bankruptcy Trustee Brian Budsberg, in accordance with an order from the U.S. Bankruptcy Court for the Western District of Washington, in *In re Dubois*, case number 13-46104. Dkts. 1, 12, and 23. The case arises from a dispute among the Defendants who have asserted conflicting claims to $124,769.28, which has been deposited in the registry of the Court. *Id*.

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  RELEVANT FACTS

The funds at issue are the proceeds of the bankruptcy court's ordered sale of real property commonly known as 11003 58th St. Ct. E. Puyallup, Washington ("the property"). Dkts. 1, 12, and 23. The property was owned, in part (25%), by Defendant Ted Spice. *Id.* Spice was not a debtor in the bankruptcy. *Id.* The debtors were Donna Dubois and her husband. *Id.* Donna Dubois is the heir of the 75% owner of the property, who passed away. *Id.* Spice actively participated in the bankruptcy proceedings, including contesting the sale of the property. *Id.* Spice asserts that he lived on the property for sixteen years before it was sold. Dkt. 82. Spice states that he lived in one of two mobile homes on the property. *Id.*

Several years before the property's sale in 2019, on July 20, 2012, a judgment in favor of the moving party, Alaska CU, against Ted Spice was entered in *Alaska USA Federal Credit Union,* Pierce County, Washington Superior Court case number 11-2-15678-3 in the amount of $22,528.43, plus post judgment interest, which Alaska CU asserts is $37,961.97 as of April 2020. Dkt. 78, at 5-7 and 13. On July 23, 2012, a certified copy of the judgment was recorded with the Pierce County Auditor under number 201207230319. Dkt. 78, at 9-11.

On August 6, 2013, Spice filed a Declaration of Homestead regarding the property with the Pierce County Auditor under instrument number 201308060501. Dkt. 79, at 5.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 2

As is relevant here, all other judgments and liens filed by the Defendants in this case against Spice were filed after August 6, 2013.  Dkt. 40-1, at 26 (On September 19, 2013, the United States filed a Notice of Federal Tax Lien for $50,666.67 plus interest against Spice with the Pierce County Auditor under instrument number 2013093000480); and Dkt. 46 (The City of Puyallup maintains that it was awarded a judgment against Spice for $191,804.35 plus interest and "[a] certified copy of said judgment was thereafter recorded with the Pierce County Auditor on May 23, 2016 under Auditor's No. 201606160339").

**B. PROCEDURAL HISTORY**

In order to clarify which parties remain in this case, procedural history regarding the parties is helpful.

Some parties, Donna Dubois, Estate of Doris Mathews, and the Tacoma Pierce County Health Department, were served with the complaint in this case and have not appeared or otherwise responded.  Dkts. 32 and 50.  Defaults have not been sought or entered.  Further, on March 17, 2020, Plaintiffs and Counter-Defendants Brian Budsberg and his law firm, Budsberg Law Group PLLC, Defendant Brian Bartelson, and Defendant Estate of Dorothea M. Spice were dismissed.  Dkt. 69.  On April 23, 2020, Defendant Thomas Miller withdrew his claim to the interpleader funds, with prejudice.  Dkt. 76.  Thomas Miller should be dismissed from this case with no further analysis.

Accordingly, the remaining active parties in this case are Alaska CU (the moving party here), the United States, Ted Spice and the City of Puyallup.  The United States has noted a motion for judgment on the pleadings for June 12, 2020, seeking $50,666.67, plus additional interest accrued after November 19, 2019, and claiming a preference.  Dkt. 80.  Defendant City of Puyallup has not yet filed a motion for disbursal of the funds, but claims, as of November 26, 2019,

ORDER ON MOTION FOR SUMMARY JUDGMENT - 3

that it is entitled to at least "$191,804.35, with interest accruing at the per diem rate of $43.66 per day" based on its May 20, 2016 judgment. Dkt. 46.

### C. PENDING MOTION

In its pending motion, Alaska CU claims it is entitled to the principal amount of $37,961.97, plus all accrued interest, minus statutory user fees, from the interpled funds. Dkt. 77. It argues that it has priority over all other claimants to the funds (except the United States because the United States' claim is based on a tax lien) by virtue of being "first in time" in getting its judgment against Ted Spice. *Id*. It maintains that Ted Spice is not entitled to a homestead exemption on the funds. *Id*.

Ted Spice responds and opposes Alaska CU's motion. Dkt. 81. He asserts that he is entitled to a homestead exemption on the funds. *Id.* Alaska CU filed a reply (Dkt. 83) and the motion for summary judgment motion is ripe for consideration.

## II.   DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. HOMESTEAD EXEMPTION**

Ted Spice raises Washington's homestead exemption to as a defense to Alaska CU's claim. Washington's homestead exclusion, RCW 6.13.070(1) provides:

> Except as provided in RCW 6.13.080, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030. The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in RCW 6.13.030, shall likewise be exempt for one year from receipt, and also such new homestead acquired with such proceeds.

Statutory exceptions are found at RCW 6.13.080, none of which apply here.

ORDER ON MOTION FOR SUMMARY JUDGMENT - 5

Homestead statutes are favored in the law and are to be liberally construed. *In re Dependency of Schermer,* 161 Wash.2d 927, 953 (2007); *In re Jefferies*, 468 B.R. 373 (2012)

The sale was not a "voluntary" sale, and so the second sentence in RCW 6.13.070(1), regarding voluntary sales, does not apply. Washington courts have defined a forced, or involuntary, sale as follows:

> A forced sale is generally a transaction in which there is an element of compulsion on the part of either the seller or the buyer. If the element of compulsion is based upon purely economic reasons, the sale is generally considered voluntary ... Where, however, a seller or buyer is forced to act under a decree, execution or something more than mere inability to maintain the property, the element of compulsion is based upon legal, not economic, factors ...

*Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle*, 101 Wn.2d 416, 422, 679 P.2d 928, 931 (1984)(*quoting State v. Lacey*, 8 Wash.App. 542, 549, 507 P.2d 1206 (1973)).  The sale of the property here was compulsory pursuant to the bankruptcy court's orders and so was involuntary.

Spice argues that involuntary sales required by court orders should be protected under the homestead statute.  Dkt. 81.  He asserts the statutory exceptions found in RCW 6.13.080 do not include involuntary sales like the one here. Dkt. 81.  Spice reasons that involuntary sales must be protected to avoid absurd results. *Id.*  He argues that "[s]omeone who is forced to sell their home due to a judicial foreclosure, marriage dissolution decree, or bankruptcy order is in far more need of quickly being able to obtain a home than someone who voluntarily sells their home (who presumably already has a plan to purchase a new home when he or she sells the first home)." *Id.*  He maintains that "[i]t should be presumed that someone who involuntarily sells their home needs the proceeds of the sale protected in order to purchase a new home without having to worry about such funds being taken by creditors." *Id.*

Only the first sentence of RCW 6.13.070(1) applies here: "the homestead" ($125,000 pursuant to RCW 6.13.030) "is exempt from attachment, execution or forced sale for the debts"

ORDER ON MOTION FOR SUMMARY JUDGMENT - 6

(amounts owing to Alaska CU and to the City of Puyallup) "of the owner" (Spice). The second sentence of RCW 6.13.070(1) does not apply because the sale of the subject property was a forced, involuntary sale. The plain language of the statute indicates that the second sentence does not modify the first sentence (the Court is mindful that this conclusion can be read as contrary to *In re Jefferies* (*supra*)). The proceedings here, where the subject property was sold pursuant to the bankruptcy court order to satisfy the DuBois' debts, and Spice's 25% interest in the property was included and sold over his objection, and now as part of the same sale, his share is subject to demands by his creditors for payment from these proceeds, is tantamount to execution and attachment, and more importantly, is a continuation of the forced sale proceedings ordered by the bankruptcy court.

There is simply no reason that Spice should be denied the protection of Washington Homestead law because of the convoluted path that led to the issue of disposition of Spice's share of the sale proceeds. This conclusion is consistent with the required liberal construction of Homestead law and with Chief Bankruptcy Judge Barreca's opinion in *In re Good,* 588 B.R. 573 (2018)(holding "[t]his statutory framework would be meaningless if homestead proceeds from a forced sale were not entitled to an exemption").

**C.  FIRST-IN-TIME, FIRST-IN-RIGHT**

Under Washington law,

> The lien of judgments upon the real estate of the judgment debtor shall commence as follows: . . . Judgments of the superior court for the county in which the real estate of the judgment debtor is situated, from the time of the filing by the county clerk upon the execution docket.

RCW § 4.56.200(2). With several statutory exceptions, none of which apply, Washington generally follows a "first-in-time first-in-right" rule in determining the priority of lienholders. *Robb v. Kaufman*, 81 Wn. App. 182, 190 (1996).

ORDER ON MOTION FOR SUMMARY JUDGMENT - 7

Of the remaining Defendants in this interpleader action, the Federal tax lien comes first, Spice's homestead comes next, and Alaska CU is the first judgment creditor to file a lien against Spice's property. None of the parties dispute that Alaska CU was the "first-in-time." The City of Puyallup is apparently fourth in line.

**D.  CONCLUSION**

Alaska CU's motion for summary judgment should be denied. It appears that there will be no interpled funds remaining after payments to the United States and Spice.

### III.  ORDER

It is **ORDERED** that:

- Defendant Thomas Miller **IS DISMISSED**; and
- Alaska USA Federal Credit Union's Motion for Summary Judgment and Disbursement of Registry Funds (Dkt. 77) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of June, 2020.

ROBERT J. BRYAN
United States District Judge